MAGGIE PEARL SHARP, Appellant, *vs.* MATTHEW S. SHARP *et al.* Appellees.

*Opinion filed February 24, 1928.*

1. PLEADING—*when cause will be disposed of on answer where pleas were filed at the same time.* A defendant may plead to a part of a bill and answer the rest, but the parts to which such pleadings are directed should be specifically indicated, and one cannot at the same time meet the whole substance of the bill, or any part thereof, by both plea and answer; and where defendants have filed pleas and an answer at the same time and the record does not show any disposition made of the pleas, the Supreme Court will consider all defenses as compatible with each other and as if all had been made by answer.

2. TRUSTS—*parol evidence must be clear to establish resulting trust.* Parol evidence, to establish a resulting trust, must be clear, strong and unequivocal and must establish the fact of payment of the purchase money by the alleged beneficiary beyond a doubt.

3. PARTITION—*when complainant is entitled to accounting.* A complainant seeking partition of property inherited from her father is entitled to an accounting of rents and profits from the defendants, her mother, sister and brother, who have been in exclusive possession of the property since the death of the father; and a decree for partition and setting aside dower and homestead should order an accounting for the reasonable rental value of the lands.

APPEAL from the Circuit Court of Sangamon county; the Hon. E. S. SMITH, Judge, presiding.

S. H. CUMMINS, for appellant.

L. E. STONE, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

Maggie Sharp (hereafter referred to as appellant) filed her bill during October, 1923, in the circuit court of Sangamon county, praying for the partition of 100 acres of farm land located about nine miles west of Springfield. Her mother, Jennie Sharp, who is now about seventy-nine years of age, her brother, Matthew Sharp, whose family consists of his wife and three children, and appellant's unmarried sister, Effie Sharp, all three of whom have lived together continuously upon the premises since before the death of appellant's father, in 1908, and who are hereafter called appellees, were made defendants to the bill. The bill alleged that the widow and her three children named were the only heirs-at-law of James Sharp, deceased; that upon his death each child became seized in fee of an undivided one-third part of said lands, subject to the dower and homestead rights of their mother; that appellees have had possession of the lands since the father's death, and though appellant has often requested a voluntary partition and division of the premises, as well as an accounting of rents and profits due her, appellees have refused to comply with such request. The bill, among other things, prays for partition of the lands and an accounting for rents accrued and to accrue since the father's decease. Two pleas and an answer to the bill were filed on the same day by appellees. One plea set up *laches* on the part of appellant as a defense to any right to an accounting for rents. The other plea set forth that the mother and widow has had possession of the

premises and the use and income therefrom by reason of an agreement entered into by appellant and appellees, and that the mother has paid the taxes upon the property during her occupancy thereof. No disposition of the pleas appears to have been made. The answer admitted certain facts alleged in the bill but denied the father was at his death seized in fee of the premises, and denied that appellant was entitled to the relief prayed. The answer averred that at the time of the original purchase of the property the widow paid out of her own money a large part of the purchase price, which was never re-paid to her, and that she and her deceased husband held the property as tenants in common in equal shares, though the legal title by mutual agreement was taken and always remained in the name of her husband. The answer further denied the interest of the parties as alleged in the bill, and averred that at the death of Sharp his widow was entitled to dower and homestead in an undivided one-half of the property, and was, in fact, the owner in equity of the other half thereof. The cause was referred to the master in chancery to take the proof and report his conclusions of law and fact. The master made his report, finding each of the three children to be the owner in fee of an undivided one-third part of the premises, subject to the dower and homestead rights of their mother. He also found that appellant was not entitled to an accounting for rents, that appellees were not entitled to any reimbursement on account of taxes paid or for repairs and improvements, and that the widow had no other interest in the property. He recommended partition of the lands accordingly. Objections to the report were filed by both parties to the litigation, which objections were overruled by the master and stood as exceptions before the chancellor, where the same were overruled and a decree entered in accordance with the findings and report of the master. From that decree Maggie Sharp prosecuted an appeal to the Appellate Court for the Third District, where, upon consideration of the case

by that court, it was found cross-errors had been assigned upon the record by appellees relative to the question whether or not a resulting trust in the farm lands was created in favor of the widow. The cause was accordingly transferred to this court for the reason that a freehold is involved.

The chief contention on the part of appellant is, that the court erred in overruling her exceptions to the master's report finding she was not entitled to an accounting for rents. The contentions on the part of appellees are, that the court erred, first, in not finding that a resulting trust existed in favor of the widow whereby she has an interest in fee in the premises; and second, in not holding that appellant admitted the legality and truth of the contents of appellees' two pleas because they were not replied to or answered.

We are not disposed to attempt a lengthy discourse upon the proper rules and practice to be observed and followed in equity pleading. The plea of *laches* shows it was intended as a bar to any alleged rights of appellant to an accounting for rents. The plea setting up an agreement between the parties whereby the widow had been in continuous possession of the farm since the father's death and was to so continue during her lifetime might be interpreted as a complete defense to any alleged present right of appellant to partition of the premises or as a defense to her supposed right to an accounting for rents. The answer set up as a defense facts tending to establish a resulting trust in the premises in the widow. The pleas were not set down for hearing and do not appear to have been disposed of in any manner. As previously stated, the pleas and answer were filed on the same day. A defendant may plead to a part of a bill and answer the rest, but the parts to which such pleadings are directed should be specifically indicated. He cannot at the same time meet the whole substance of the bill, or any part thereof, by both plea and answer. Regardless of whether either of the pleas was intended as a

defense to the entire bill, or was waived by the answer
filed, or was admitted by the fact that the pleas were not
set down for argument and their sufficiency passed upon
by the chancellor, in view of the fact that the parties to
the litigation, as well as the chancellor, considered the is-
sues as made upon the pleas and answer and evidence was
introduced accordingly, it is proper that we treat the case
in like manner, thereby considering all defenses as com-
patible with each other and as if all had been made by an-
swer. *Weber* v. *Fitzgerald,* 281 Ill. 330.

The record contains some evidence given by the widow
relative to the purchase of the farm by her husband and
herself over twenty-three years ago. Her testimony in sub-
stance was that the original cost was about $9000, which
they paid in cash, and she put in over $4000 which she ob-
tained from a sale of land received by her from her father.
Title to the 100 acres was taken in the husband's name,
but she testified he wanted her to stay there as long as she
lived. The competency of this evidence was questioned at
the hearing. None of the children or anyone else had ever
heard of their mother owning or having previously claimed
an interest in the land by reason of paying part of the origi-
nal purchase price therefor. Without passing upon the com-
petency of this testimony, the record, in our opinion, does
not warrant holding that a resulting trust existed or was
created in favor of the widow. " 'The policy of the law
requires that everything which may affect title to real estate
shall be in writing; that nothing shall be left to the frailty
of human memory or as a temptation to perjury, and wher-
ever this policy of the law has been broken in upon and
parol evidence admitted, the courts have been ever careful
to examine into every circumstance which may affect the
probability of the alleged claim, as the lapse of time, the
means of knowledge and circumstances of the witnesses,
and will not grant the relief sought where the claim has
been allowed to lie dormant for an unreasonable length of

time or where the evidence is not very clear in support of the alleged right, especially where no claim has been set up during the lifetime of the trustee but is raked up and charged against the heirs, who may not be supposed to know anything about it or be able to defend it as their ancestor might have done.' (*Enos* v. *Hunter,* 4 Gilm. 211.) It is also the settled law of this State that parol evidence to establish a resulting trust must be clear, strong and unequivocal and must establish the fact of payment of the purchase money by the alleged beneficiary beyond a doubt." *Orear* v. *Farmers State Bank,* 286 Ill. 454. See, also, *Keuper* v. *Mette,* 239 Ill. 586.

The record discloses that appellant was married and evidently had established a household of her own prior to the purchase of the farm property by her father. After the purchase, and before the father's death, Matthew, the son, who is one of the appellees, married, and he and his wife continued to live with his father on the farm. Since the father's death, Matthew, his wife and children, his mother and his unmarried sister have continued to occupy the premises, which he farmed and used as his own. He received all income therefrom and his mother received her living and such things as she wanted. He paid the taxes, made some repairs, built fences, and did some work in the way of improvement of buildings. He testified appellant had never made any demand for rent, but she did want to sell to him her interest in the farm. There is proof showing some thought and consideration had been given by Matthew, and also by his mother, relative to the purchase or sale of appellant's interest in the property. Appellees endeavored to establish a contract between the widow and appellant whereby the mother was to have the possession and use of the premises so long as she lived. It is useless to set out in detail the testimony in the record, as it is conflicting upon this point. Appellant denies any such agreement, while her brother, Matthew, testifies to a verbal

agreement of that nature, and, after his mother referred to a written agreement which she said appellant signed, he then testified corroborating to some degree the mother's testimony. He stated each child had his own separate agreement, but there was no such writing produced in evidence nor was its exact contents disclosed. The evidence offered upon this branch of the case was highly unsatisfactory for the purpose of establishing any kind of agreement between the parties.

We have read all the testimony presented in the case, and an analysis of it forces us to the conclusion that the premises here involved have been more in the exclusive possession of and under the sole supervision of Matthew than of his mother. The property appears to have a value of $20,000 or more and a cash rental value of between $8 and $10 an acre. Nothing has been paid to appellant at any time as her share of the profits derived from the premises or as rental therefor. Manifestly, the widow, as recommended by the master and decreed by the chancellor, is entitled to her right of dower and estate of homestead, but such can be obtained by her and yet all parties interested may also receive their just share or interest in the premises or its proceeds. We are of opinion the chancellor was correct in decreeing that partition of the premises be made, and we see no reason why appellant is not also entitled to an accounting for the reasonable rental value of the lands.

The decree of the circuit court is therefore affirmed as to the partition of the premises and reversed in denying an accounting for rents, and the cause is remanded for an accounting.                    *Reversed in part and remanded.*