PAULINE WONG HUGH *et al.*, Plaintiffs-Appellants, v. AMALGAMATED TRUST AND SAVINGS BANK, as Trustee, *et al.*, Defendants-Appellees.

First District (2nd Division)  No. 1—91—0054

Opinion filed September 8, 1992.

Stone, Pogrund, Korey & Spagat, of Chicago (Martin S. Korey and Lawrence J. Stark, of counsel), for appellants.

Schuyler, Roche & Zwirner, P.C., of Chicago (James D. Adducci, Richard S. Weinberg, and Jeffrey E. Schiller, of counsel), for appellee Chester Sum Wong.

JUSTICE SCARIANO delivered the opinion of the court:

On June 3, 1972, defendant Chester Sum Wong (Chester), father of plaintiffs Pauline Wong Hugh (Pauline) and Herman Wong (Herman), entered into an Illinois land trust agreement with Amalgamated Trust and Savings Bank (Amalgamated) whereby Amalgamated became trustee as to five separate parcels of real property. The rental income from these properties was deposited in four bank accounts, one at the First National Bank of Chicago (FNB) and three at Amalgamated. On October 5, 1987, Chester created the Wong Grandchildren Trust for the benefit of his grandchildren, Arnold, Carol and Brenda Wong, wherein Herman was eventually named trustee; and on October 7, 1987, Chester executed and delivered to plaintiffs five letters of direction instructing Amalgamated as trustee to issue deeds to four of the properties to the Wong Grandchildren Trust, and to deed the remaining parcel to Pauline. As of January 16, 1990, the letters of direction had not been presented to Amalgamated, nor is there any indication in the record that Amalgamated had any knowledge of the

existence of such letters. On that date, however, Chester wrote the following letter to Amalgamated:

"Gentlemen:

From time to time in the past I have been asked to sign certain amendments to the above land trust and assignments of the beneficial interest therein. I hereby revoke any and all such documents which I have signed; and I direct you, as Trustee, not to accept any such documents dated before this date."

On March 27, 1990, the letters of direction were presented to Amalgamated, but it refused to issue the deeds.

In the verified complaint at issue in this appeal, plaintiffs Pauline individually and Herman in his capacity as trustee alleged that Betty Wong, Herman's wife and a co-signatory with Chester on the three bank accounts in Chester's name at Amalgamated (but not on the account at FNB also in his name), had managed the properties at all times after the issuance of the letters of direction. Specifically, they alleged that Betty collected and deposited the rental income from the properties, paid utilities, taxes and insurance premiums, and hired contractors to do repair work on the properties. They acknowledged, however, that Chester retained access to all bank accounts relating to the properties. They further alleged that the rental income from the properties "was used primarily by Chester Sum Wong, to pay the school tuition of his grandchildren *** and was also used to maintain the [Real] Property."

The complaint sought several types of relief: (1) a declaration that plaintiffs were the owners of the properties, and were entitled to the rental income which had accrued therefrom, since October 7, 1987; (2) an order to Amalgamated to issue trustee's deeds to plaintiffs; (3) an injunction against Amalgamated prohibiting it from encumbering or conveying the properties, and against FNB prohibiting it from releasing any funds related to the properties without express order of court; and (4) an award of reasonable attorney fees.

On October 4, 1990, the parties entered into an agreed order pursuant to which the properties and the income they produced would be managed and accounted for *pendente lite*. On November 9, 1990, pursuant to section 2—615 of the Illinois Code of Civil Procedure (Ill. Rev. Stat. 1989, ch. 110, par. 2—615), Chester filed a motion to dismiss the complaint with prejudice, claiming that he had not relinquished all present and future power and dominion over the properties. During the hearing on the motion to dismiss, Chester was given leave of court to convert it from one brought under section 2—615

into one brought under section 2—619. Ill. Rev. Stat. 1989, ch. 110, pars. 2—615, 2—619.

On December 21, 1990, the trial court dismissed the complaint with prejudice, holding from the bench that "no gift was executed or completed, if you will, whatsoever, of the interest. It could not be until such time as the trustee received the document and proceeded thereon; *** it seems to me when a person deposits a power of direction, that is a revocable instrument until it's delivered," and here there was nothing "delivered to the trustee until after there had been *** a cancellation of the documents." On January 2, 1991, plaintiffs filed their notice of appeal.

■ It is well-established law that "[a] gift is a voluntary, gratuitous transfer of property by one to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee. [Citation.] Moreover to prove a gift it must be shown that the donor has relinquished all present and future dominion and power over the subject matter of the gift. [Citation.]" (*In re Marriage of Cook* (1983), 117 Ill. App. 3d 844, 849; see also *Pocius v. Fleck* (1958), 13 Ill. 2d 420.) Plaintiffs urge that by executing and delivering the five letters of direction, which specifically commanded that the trustee deed a 100% undivided interest in each property, Chester adequately met the requirements necessary to establish an irrevocable gift.

## A

The parties do not dispute that Chester did manifest the intent to make a gift of the properties at issue here. Plaintiffs assert, however, that Chester's delivery of the letters of direction to plaintiffs constituted a completed gift of the properties referred to therein; that by placing those letters in their hands, he had delivered "the only means by which they could obtain Trustee's deeds" to the properties, and that he could do nothing more to convey his interest. The trial court rejected this argument, however, concluding that unlike an assignment of a beneficial interest which "is a current conveyance instrument," a letter of direction "directs somebody else to convey the instrument; convey it when, we don't know. *** The quality of a direction is a direction for someone else to act. An assignment of a beneficial interest represents a conveyance of an interest in and of itself." Consequently, the trial court held that Chester retained the power to withdraw these letters of direction, since plaintiffs had not yet acted upon them.

Plaintiffs further aver that their complaint alleges sufficient facts to show that Chester parted with exclusive dominion and control over the subject of the gift, *viz.*, the realty. They argue that in order to part with dominion and control of real estate, which is fundamentally the subject of the gift here, a donee need only manage, preserve and improve the properties to the exclusion of the donor, citing *People v. Chicago Title & Trust Co.* (1979), 75 Ill. 2d 479. They point out that their complaint also sets forth that Betty Wong, a co-signatory with Chester on the three bank accounts at Amalgamated, had managed the properties at all times after the issuance of the letters of direction, and that Betty collected and deposited the rental income from the properties, paid utilities, taxes and insurance premiums, and hired contractors to do repair work on the properties. Plaintiffs further argue that Chester did nothing with respect to the properties except that he had access to the rental income they generated, and that gifts of principal are not invalidated where the donor reserves a right to the income generated therefrom. (*Johnson v. La Grange State Bank* (1978), 73 Ill. 2d 342, 363, distinguishing *In re Estate of Morys* (1973), 17 Ill. App. 3d 6.) Plaintiffs also claim Betty Wong was their agent, although they fail to plead any facts which suggest this relationship; rather, from the facts pleaded, she appears to have been Chester's agent, since she acted on his behalf as owner of the properties and the person ultimately responsible for them.

Chester relies mainly on *In re Estate of Morys* to support his position that he did not part with exclusive dominion and control over the subject of the gift. In that case, Mrs. Morys purported to assign the beneficial interest in a land trust to Ms. Dopak, and although Ms. Dopak collected the rents on the property, she deposited them in a bank account in Mrs. Morys' name. The court held that no *inter vivos* gift resulted because Ms. Dopak "collect[ed] the rents and deposit[ed] them in Mrs. Morys' bank account." (*Morys,* 17 Ill. App. 3d at 10.) Chester points out that Betty deposited the rents collected from the properties in bank accounts *in his name* and on which he was·a signatory. While paragraph 17 of the complaint alleges that "at all relevant times prior to October 5, 1987, and thereafter, the rental income from the Properties" was used by Chester to pay the school tuition of his grandchildren and to maintain the properties, Chester contends that merely because Betty assumed the day-to-day management of the properties does not suggest, in and of itself, that he relinquished all present and future power over the properties, inasmuch as she continued to treat them as though they belonged to Chester.

Plaintiffs claim that *Morys* is factually distinguishable, in that the parties were unrelated in *Morys*, but here, the parties are parent and child, and a transfer from parent to child and/or grandchild is presumed to be a gift (*Nordlund v. Nordlund* (1983), 116 Ill. App. 3d 223). Chester responds that while it is true that in *Nordlund* the court recognized the presumption that a parent's placing title in a child is a gift, here he placed title only in the trustee of the grandchildren's trust, and not in the grandchildren themselves.

We find plaintiffs' reliance on *Chicago Title & Trust* to be unwarranted, since it does not reach the holding they ascribe to it, but addresses instead the issue of who is the "owner" of a parcel of property held in a land trust for the purpose of fixing property tax liability only, the tax having been imposed by statute on the "owner" of the realty. Rather, we agree with Chester that he did not part with exclusive dominion and control over the subject of the gift; nor does he appear to have been barred or deprived from exercising any of the attributes of ownership at all by anyone. Plaintiffs' attempt to distinguish *Morys* on the basis of its facts is also unconvincing.

■ In an Illinois land trust the legal and equitable title to the *res* lies with the trustee, and the beneficiary retains what is referred to as a personal property interest. (*Chicago Federal Savings & Loan Association v. Cacciatore* (1962), 25 Ill. 2d 535, 543.) It is important to note, however, that though referred to as personal property, most of the usual attributes of real property ownership are retained by the beneficiary under the trust agreement. (*Chicago Title & Trust*, 75 Ill. 2d at 488.) In fact, the beneficiary retains absolute control of the management and receives all of the proceeds generated by the property, and the trustee may not act except on written authorization of whoever may be designated in the trust agreement as having such "power of direction," who is almost invariably also the beneficiary, as is the case here.

For more than two years after Chester had delivered the letters of direction to plaintiffs, he continued to manage and control the properties at issue here not only by virtue of his being the beneficiary of, and his holding of the power of direction over, the *res* of the trust, but also, according to the record, because he continued to be responsible for paying the real estate taxes on these properties, since they were still in his name and the tax bills were addressed to him. He also continued to be liable for the payment of the electric bills and the insurance premiums, both of which remained in his name. Chester at all times also maintained control over the funds necessary to pay

these bills, including charges for maintenance and repairs, and the funds were generated by the properties.

■ Indeed, the record plainly shows that plaintiffs failed to take the single remaining step essential to the transfer of the emblems of ownership of the property from Chester to themselves until they presented the letters of direction to the trustee on March 27, 1990, some 29 months after Chester had delivered them to plaintiffs. However, it is important to note:

> "To constitute a good gift it is not necessary that the donor directly transmit the property in question to the donee, but such delivery may be made intermediately through the agency of a third person. Where such third person consummates the transaction by delivery to the donee *prior to an express or an implied revocation of his authority*, then, of course, by the ordinary principles of agency the gift is complete. Serious questions, however, arise when no such delivery by the third person has taken place, though even here it is not the principles of law but their application that causes the difficulty. If the third person be the agent, bailee, or *trustee* of the donor, then the gift must fail for lack of a *complete* delivery, for in such case the donor retains by means of his control over the agent, dominion and control over the subject matter of the gift." (Emphasis added.) (R. Brown, The Law of Personal Property §7.4, at 87 (3d ed. 1975).)

We therefore direct our attention to the question of whether Chester actually revoked his gift.

### B

That issue turns on an interpretation of Chester's January 16, 1990, letter to Amalgamated, which, because we find it to be unambiguous, presents only a question of law. (*Srivastava v. Russell's Barbecue, Inc.* (1988), 168 Ill. App. 3d 726, 732.) Chester contends that this instrument expresses his intention to revoke the letters of direction given to plaintiffs. Indeed, relying on this letter, the trial court held that he had revoked the letters of direction. We disagree with both Chester's contention and the trial court's holding that there was a "cancellation of the documents," since by the clear language of the letter itself, only "amendments to the *** land trust" and "assignments of the beneficial interest therein" are revoked; nothing is said about directions to make an outright conveyance of the properties, which would have taken them out of the trust and placed title in plaintiffs.

■ In his brief Chester avers that he had written "the trustee of the land trust and instructed it to disregard the letters of direction." At oral argument before this court, however, he acknowledged, as he must, that the January 16, 1990, letter did not mention letters of direction. Rather, he claimed that its phrase "such documents" embraces a direction to convey inasmuch as a direction is "alike, similar, or of the like kind" as an assignment or amendment. We cannot give Chester's letter such an expansive interpretation. Chester appears to be invoking the ancient common law rule of *ejusdem generis*, employed in the construction of statutes, wills, contracts and other written instruments, *viz.*, that "[w]hen general words or phrases follow a set of enumerated things, \*\*\* the general word is limited in meaning to the same kind or class as those previously enumerated." (*People ex rel. Fahner v. Hedrich* (1982), 108 Ill. App. 3d 83, 96, citing *Farley v. Marion Power Shovel Co.* (1975), 60 Ill. 2d 432, 436.) We have no such situation here, for the instrument at issue contains a clear and unmistakable enumeration of only two items that, though specific in character, are not sufficiently similar to belong to one identifiable class. In the case at bar it cannot be successfully argued that "amendments to the \*\*\* land trust" and "assignments of the beneficial interest therein" constitute an enumeration of terms that, though specific in character, are sufficiently similar to belong to a single identifiable class.

Accordingly, Chester's *ejusdem generis* argument must be rejected, and we therefore hold that he failed to revoke the direction to convey given to plaintiffs by virtue of the letter of January 16, 1990. For all of the above reasons, we reverse and remand this cause for further proceedings consistent with the views expressed in this opinion.

Reversed and remanded.

HARTMAN, P.J., and McCORMICK, J., concur.