CYNTHIA ANN HALL, Plaintiff-Appellant, v. LINN WILLIAM EATON, JR., Defendant-Appellee.

Fourth District   No. 4—93—0634

Argued January 19, 1994.—Opinion filed March 25, 1994.

Carroll Baymiller (argued) and Kenneth L. Ott, both of Baymiller & Radley, of Peoria, for appellant.

Franklin M. Hartzell (argued) and Stanley L. Tucker, both of Hartzell, Glidden, Tucker & Hartzell, of Carthage, for appellee.

JUSTICE COOK delivered the opinion of the court:

On October 27, 1972, Linn W. Eaton, Sr., and Mildred K. Eaton conveyed to their children, plaintiff Cynthia Ann Hall (Hall) and defendant Linn William Eaton, Jr. (Eaton), as joint tenants, a 300-acre farm. In count I of her complaint, Hall sued Eaton for partition of the farm. Partition has now been completed, the land sold, and the proceeds distributed. In count II, Hall sought an accounting from Eaton for his use and occupancy of the land between 1972 and 1991. At trial, Hall limited her request for accounting to the years 1983 through 1991. The trial court awarded Hall $18,284.25 as the fair rental value of her one-half interest in the 300-acre farm for the years 1988 through 1991, including 6% prejudgment interest. Hall appeals, contending the trial court erred in denying her prayer for an accounting for the years 1983 through 1987. We affirm.

At the bench trial, it was established that the parties' parents owned and lived on a 275-acre farm (home farm) approximately two miles from the 300-acre farm. Hall testified she moved away from home in 1967 and has never since lived on either farm, but she visited

the farms every weekend until her marriage in the early 1980s and twice a month thereafter. She testified Eaton lived with the parents on the home farm and in 1972, on his return from school, began managing the family's cattle herd. Hall stated it was not until the death of Eaton, Sr., in 1983 that Eaton took over the farming duties his father had performed. He continued these duties until 1991, the year of Mildred Eaton's death and the year Hall filed suit.

Hall stated when she asked her mother what she should do about her one-half interest in the 300-acre farm, Mrs. Eaton responded their accountants were taking care of the matter. Hall did not inquire further about any income accruing from the 300-acre farm. Until filing suit Hall never requested or received any accounting of the rents or profits, nor did she receive any income or crops. Hall added she never paid any real estate tax on the farm, and she never contributed any funds toward farm expenses. Hall, after Eaton, Sr.'s death, saw checks made out to Eaton, which she believed came from sale of the cattle he managed. However, she could not recall dates or amounts of the checks.

Eaton testified he left home in 1957 and spent four years studying at the University of Illinois, six years at the University of Missouri graduate school, and then did research at various institutions until 1972. He received his Ph.D. degree in agriculture from the University of Missouri in 1969. Eaton returned to the home farm in 1972, after his father had major cancer surgery. Eaton thereafter assisted in managing the cattle business and labored on both farms. After Eaton, Sr., died in 1983, Eaton did most of the physical work involved in managing the cattle business, although his mother helped when she was able.

Eaton stated no separate records were kept of money received from operations on the 300-acre farm, claiming "it was one pool, one total income as far as my parents were concerned." After Eaton, Sr.'s death, income from both farms was placed in two joint accounts, held by Eaton and Mrs. Eaton, with Mrs. Eaton's social security number on them. Eaton kept no records of deposits or withdrawals from those accounts but noted some of the income may have been deposited into an account with his name on it. Upon Mrs. Eaton's death, Eaton took over the joint accounts. Until 1988, Eaton did not file income-tax returns because all farm income prior to that had been reported on Mrs. Eaton's tax returns. When Eaton began filing income-tax returns in 1988, he and Mrs. Eaton "essentially split" the income and expenses from both farms, so their returns were nearly identical.

Eaton testified he was never compensated in a regular manner for assisting his parents in the farm operation. Instead, he received

gifts from time to time. In 1988, after Mrs. Eaton had had a stroke and spent months recuperating from it, Eaton became his mother's tenant. Eaton stated his parents were in possession of the 300-acre farm when they deeded it to Eaton and Hall in 1972, and that possession continued in the parents until Mrs. Eaton's death in 1991. Eaton acknowledged he never gave Hall a written accounting of the income or profits from the 300-acre farm, and he never gave her income or crops from the farm.

Three expert witnesses testified to the appropriate cash rental value for a one-half interest in the 300-acre farm for the years 1983 through 1991. Harold Eugene Vaughn, a professional farm manager, determined $51,502.50 was a fair value. Wayne Tomlinson, a real estate broker and appraiser estimated the net income of a one-half share would be $5,307.02 per year. Tomlinson testified the farm sold for $99,000, which amounted to approximately two-thirds of the farm's appraised value. Darrell L. Dunteman, an agricultural financial consultant and accountant, suggested an average net income for a one-half share of $5,387 per year.

The trial court concluded an accounting should be made but found no evidence demonstrating Eaton had any income from the property prior to 1988. While Eaton may have been given gifts from his parents, those monies likely paid for Eaton's education, and no evidence indicated those gifts were accumulated from the farm income. The court indicated an accounting for the years 1988 through 1991 would be appropriate and concluded an average of Vaughn's and Dunteman's figures would adequately reimburse Hall. Because of the delay in the accounting, the court added 6% interest to the judgment. This appeal followed.

A "gift" is "a voluntary, gratuitous transfer of property by one person to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee." (*Moniuszko v. Moniuszko* (1992), 238 Ill. App. 3d 523, 529, 606 N.E.2d 468, 472; see also *Hugh v. Amalgamated Trust & Savings Bank* (1992), 235 Ill. App. 3d 268, 271, 602 N.E.2d 33, 35.) A gift is not shown unless the donor has relinquished all present and future dominion and power over the subject matter of the gift. (*Moniuszko*, 238 Ill. App. 3d at 529, 606 N.E.2d at 472; *Hugh*, 235 Ill. App. 3d at 271, 602 N.E.2d at 35.) The alleged donee has the burden of proving the existence of donative intent in the donor, and such proof must be clear and convincing in order to establish the gift. *Moniuszko*, 238 Ill. App. 3d at 529, 606 N.E.2d at 472-73.

Hall's claim for an accounting arises from her allegation that Eaton went into possession of the 300-acre farm after Eaton, Sr.'s

death and reaped all the farm's profits thereafter. Hall's implicit argument is that she and Eaton received the 300-acre farm as a gift from their parents, and Eaton's "possession" of the farm constituted completion of the gift. Based on the testimony adduced at trial, however, we believe the Eatons' deed of the 300-acre farm to Hall and Eaton was not a completed gift. The Eatons did not relinquish all present and future dominion and power over the 300-acre farm when they deeded it in 1972, for they continued to work on the farm until their respective deaths. Moreover, Eaton testified he considered all income from both farms to belong to his parents until 1988 and denied receiving any of that income, despite his increased assistance with the farm labor beginning in 1983. Given these facts, Hall has failed to prove her parents had the donative intent required to establish the gift.

When the evidence in a case is contradictory, it is the trial court's responsibility to resolve all conflicts and determine the credibility of the witnesses. (*Cotter v. Parrish* (1988), 166 Ill. App. 3d 836, 842, 520 N.E.2d 1172, 1176.) A reviewing court will not substitute its judgment regarding the credibility of the witnesses for that of the trial court, unless the findings are manifestly against the weight of the evidence. (*Brown v. Zimmerman* (1959), 18 Ill. 2d 94, 102, 163 N.E.2d 518, 523.) "A judgment may be found to be against the manifest weight of the evidence only where the opposite conclusion is apparent or where findings appear to be unreasonable, arbitrary, or not based on the evidence." (*Brencick v. Spencer* (1989), 188 Ill. App. 3d 217, 219, 544 N.E.2d 91, 93.) Where the determination of the case depends largely upon the facts found in the record, the judgment of the trial court will not be disturbed by the reviewing court if there is any evidence to support it. *Brown*, 18 Ill. 2d at 102, 163 N.E.2d at 523; *Brencick*, 188 Ill. App. 3d at 219, 544 N.E.2d at 93; *Cotter*, 166 Ill. App. 3d at 842, 520 N.E.2d at 1176.

Hall asserts the trial court erred in denying her an accounting for the years 1983 through 1987. In a suit for an equitable accounting, the party seeking the remedy must prove by a preponderance of the evidence that she has the right to the remedy. (*Kennedy v. Miller* (1991), 221 Ill. App. 3d 513, 520, 582 N.E.2d 200, 205, citing *Ferrell v. Plasti-Drum Corp.* (1987), 159 Ill. App. 3d 936, 940, 512 N.E.2d 1325, 1328.) Hall claims she is entitled to an accounting pursuant to statute (765 ILCS 1005/4a (West 1992)), which states:

> "When one or more joint tenants, tenants in common or co-partners in real estate, or any interest therein, shall take and use the profits or benefits thereof, in greater proportion than his or their interest, such person or persons, his or their executors and

administrators, shall account therefor to his or their cotenants jointly or severally."

In *Riechmann v. Riechmann* (1972), 5 Ill. App. 3d 645, 646-47, 283 N.E.2d 734, 735-36, the court held the statute does not come into effect until it is determined a co-owner in real estate has actually taken proceeds or benefits in greater proportion than his ownership interest in the property. Despite defense counsel's assertion that Hall failed to prove Eaton had "taken and used" *any* profits from the farm, the trial court agreed an accounting was necessary. However, the court specifically found no evidence to support Hall's claim that Eaton received any income from the farm prior to 1988, and therefore limited the accounting to the years 1988 through 1991. The trial court had the opportunity to observe the witnesses and determine their credibility. Because we cannot say its findings are against the manifest weight of the evidence, we will not disturb the trial court's judgment.

Hall quotes *Dombro v. Hugo* (1938), 370 Ill. 381, 386, 19 N.E.2d 183, 186, asserting that "[i]f a grantor remains in possession after an absolute conveyance it is not as owner but as tenant to his (or her) grantee." In *Dombro* recorded deeds showed that in 1925 Anna Hugo and her husband conveyed real property to Klein, who conveyed it to the Dombros in 1938. Anna denied she signed the deed, but the court rejected her argument. Anna asserted she remained in possession after 1925; the court agreed her possession was constructive notice of any rights she had, but found she had none because of her absolute conveyance to Klein. *Dombro* did not involve a gift from parent to child but a deed, supported by consideration, from the grantor to a nonfamily member. There was no argument the deed was anything other than absolute, or that a resulting trust was involved.

Another case cited by Hall, *Sharp v. Sharp* (1928), 328 Ill. 564, 160 N.E. 140, is more on point. James Sharp had title to 100 acres of land. James died in 1908, leaving his wife Jennie and three children, Maggie, Matthew, and Effie. Maggie was married and had a home of her own, but Matthew and Effie resided with Jennie on the 100 acres. The 100 acres passed from James to the three children in equal shares, subject to the dower and homestead rights of Jennie. Matthew, however, farmed and used the property as his own, receiving all the income but giving his mother what she wanted. Maggie brought an action for partition and an accounting in 1923. Jennie, who was a defendant, argued she had paid $4,000 of the purchase price and therefore the property belonged to her on resulting trust, and Matthew was only her tenant. The supreme court rejected the argument, noting that no one had ever heard before

of Jennie's partial payment of the purchase price. For a resulting trust the evidence " 'must establish the fact of payment of the purchase money by the alleged beneficiary beyond a doubt.' " (*Sharp*, 328 Ill. at 569, 160 N.E. at 141, quoting *Orear v. Farmers State Bank & Trust Co.* (1919), 286 Ill. 454, 466, 122 N.E. 63, 68.) The court further noted the claim was not raised during the lifetime of the trustee (the husband), and the premises appeared to be more in the exclusive possession of Matthew than of his mother.

A resulting trust arises by operation of law where one person furnishes the consideration for property and title is taken in another. (*Treschak v. Yorkville National Bank* (1992), 237 Ill. App. 3d 855, 857, 604 N.E.2d 1081, 1083.) It is the intent of the payor at the time of the transfer and not at some subsequent time which determines whether a resulting trust arises, but the conduct of the payor and the transferee subsequent to the transfer may show that at the time of the transfer the payor did not intend to make a completed gift to the transferee. (*Forlenza v. Forlenza* (1970), 119 Ill. App. 2d 399, 401-02, 256 N.E.2d 42, 43; *Scanlon v. Scanlon* (1955), 6 Ill. 2d 224, 232, 127 N.E.2d 435, 439.) In the present case the parents clearly did not intend to surrender the 300 acres to their children when they signed the deed in 1972. The parents remained in possession of the property and claimed the income after 1972. Unlike *Sharp*, there is no question here that the parents paid the consideration for this property. The trial court could properly have found Mrs. Eaton was the beneficial owner of the 300 acres after Eaton, Sr.'s death. Hall admitted as much when she limited her claim to the period after 1983, when she claims Eaton took over operation of the farm. The trial court, however, determined that Eaton took over the operation of the farm in 1988, after Mrs. Eaton's stroke, and ordered Eaton to account only after that time.

Hall argues Eaton received half the net income of the property when farm income was deposited into a joint bank account between Eaton and Mrs. Eaton. Hall concedes, however, that Eaton did not withdraw those funds until after Mrs. Eaton's death, when the account passed to him by right of survivorship. On the basis of the evidence presented the trial court could have found that Eaton had no present interest in the account although he did have a right of survivorship. See *In re Estate of Taggart* (1973), 15 Ill. App. 3d 1079, 1085, 305 N.E.2d 301, 305-06 (rejected proposition that depositing joint tenant sacrificed all control and that immediate gift vested in nondepositing joint tenant); *In re Estate of Chandler* (1980), 90 Ill. App. 3d 674, 678, 413 N.E.2d 486, 490.

Hall next asserts the trial court's award of prejudgment interest

at a rate of 6% is less equitable than the 8% rate she suggested. In *Kennedy* (221 Ill. App. 3d at 523, 582 N.E.2d at 207) and *In re Estate of Wernick* (1989), 127 Ill. 2d 61, 87, 535 N.E.2d 876, 888, the courts held in cases involving breach of a fiduciary duty, an equitable award of prejudgment interest can make the injured party complete by forcing the fiduciary to account for the profits and interest he gained through the use of the injured party's money. In fact, the *Wernick* court, followed by the court in *Kennedy*, awarded the petitioners interest at the prime rate, rather than the 5% rate suggested by statute for "money withheld by an unreasonable and vexatious delay." (Ill. Rev. Stat. 1991, ch. 17, par. 6402.) The courts found that "the statutory rate does not provide an accurate measure of compensation for money wrongfully withheld" because that rate has not changed to reflect the escalating interest rates of the modern market. (*Wernick*, 127 Ill. 2d at 88, 535 N.E.2d at 888; *Kennedy*, 221 Ill. App. 3d at 523, 582 N.E.2d at 207.) Here, although Hall alleged a fiduciary relationship existed between herself and Eaton as joint tenants, she offered no basis for this assertion, and the trial court found no such relationship. (See *Pure Oil Co. v. Byrnes* (1944), 388 Ill. 26, 38, 57 N.E.2d 356, 361 (mere fact that parties are tenants in common does not give rise to a fiduciary relationship).) Despite this finding, the trial court awarded Hall prejudgment interest at a rate in excess of the statutory rate. We cannot say the trial court's award of only 6% interest is against the manifest weight of the evidence. In any event, "[t]o reverse the trial court in this case would be nothing more than to substitute our judgment for the trial court's as to the proper amount of damages, which is not our proper function." *Brencick*, 188 Ill. App. 3d at 220, 544 N.E.2d at 93.

For the foregoing reasons, the judgment of the circuit court of Schuyler County is affirmed.

Affirmed.

KNECHT and STEIGMANN, JJ., concur.