2016 IL App (3d) 150229

Opinion filed September 7, 2016

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

| | | |
|---|---|---|
| BARRY JACKSON, | ) | Appeal from the Circuit Court |
| | ) | of the 10th Judicial Circuit, |
| | ) | Stark County, Illinois, |
| Plaintiff, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DBR JACKSON PARTNERSHIP, an | ) | |
| Illinois Partnership; RUSSELL E. JACKSON; | ) | Appeal No. 3-15-0229 |
| DEBRA JACKSON; and IRMA JEAN | ) | Circuit No. 12-L-2 |
| JACKSON, | ) | |
| | ) | |
| Defendants, | ) | |
| | ) | |
| | ) | |
| (Cheryl Jackson, Counterplaintiff-Appellee; | ) | |
| Russell E. Jackson, Counterdefendant- | ) | Honorable |
| Appellant). | ) | Michael P. McCuskey, |
| | ) | Judge, Presiding. |

JUSTICE HOLDRIDGE delivered the judgment of the court, with opinion.
Justices Wright and Carter concurred in the judgment, with opinion.

**OPINION**

¶ 1     Russell E. Jackson appeals from an order of the circuit court of Stark County denying his

motion for summary judgment and granting a cross-motion by his sister, Cheryl Jackson, for

summary judgment. In granting her cross-motion, the court held that Cheryl had acquired a one-

fifth interest in the family farm by way of a gift from their father, Dean Jackson. The court held that Cheryl had acquired the one-fifth interest as a gift from Dean when he executed a purchase agreement for the property in question on which he listed each his children and himself as purchasers. Cheryl maintained that, even though her name was not included as a grantee when the deed was delivered many years later, she nonetheless held an equitable interest in the property. Russell maintained in his motion for summary judgment that whatever gift Dean may have intended when the purchase agreement was executed in 1997 was incomplete and subject to revocation at any time prior to delivery of the deed. The trial court agreed with Cheryl and granted summary judgment to her. Russell appeals from that judgment.

¶ 2                                            BACKGROUND

¶ 3        Dean and his wife Irma had four children: Barry, Russell, Cheryl, and Janet. Dean was by all accounts a very successful farmer. In addition to several hundred acres he owned outright, he farmed several hundred additional acres under various agreements for purchase. In 1970, Barry joined Dean in the farming operation, and Russell joined them in 1978.

¶ 4        In 1977, Dean negotiated an agreement to purchase 320 acres of farmland from Margaret J. Dixon for $1,334,000 to be paid with interest in annual installments until 1997, when the balance would be paid and a warranty deed would be issued by the seller. The land came to be known as "the Dixon 320." The purchase agreement listed Dean and each of his four adult children as purchasers. On April 1, 1977, Dean brought the agreement to each of the four and instructed each to sign it. It is undisputed that none of the children had any role in procuring the Dixon 320. The terms of the Agreement required each purchaser to "first make payments, and perform the covenants herein mentioned" before the seller would convey title to the land.

2

¶ 5        After executing the purchase agreement, Dean farmed the Dixon 320 along with Barry and Russell. The grain harvested from the Dixon 320 was commingled with grain from other farms owned or controlled by the Jacksons, so it was impossible to determine what cash proceeds were generated by any specific acreage. Each year, Dean would deposit the proceeds from the farming operation into a savings account at the Wyoming Bank and Trust Co. in Wyoming, Illinois, which was titled "DBR Farm Account." That account was jointly owned by Dean, Barry, and Russell. Each year Dean would distribute enough money from the DBR account into Barry's and Russell's individual checking accounts to allow them to each pay one-third of the annual payment to Margaret Dixon, with Dean paying the other one-third. Dean, Barry, and Russell took net income from the DBR account for their personal living expenses. Neither Janet nor Cheryl ever received money from the DBR account or made any payments pursuant to the Dixon320 purchase agreement.

¶ 6        On March 9, 1992, an addendum to the purchase agreement was executed, which decreased the annual payment from $50,000 to $35,000 and extended the completion date from 1997 to 2009. As with the original agreement, Dean negotiated the addendum and then took it to each of his four children for their signatures. Russell testified that he believed that at the time the addendum was executed, it was Dean's intent to take Janet and Cheryl off the agreement, due to their lack of participation in the farming of the Dixon 320 and their lack of contribution to the annual payment. Barry testified that he also believed that the two sisters would not receive an interest in the Dixon 320 but "were going to get an equivalent value of that acreage somewhere along the way when it was paid for."

¶ 7        After the addendum was executed, the arrangement regarding the Dixon 320 continued as before, with Dean, Barry, and Russell participating in the farming and making the annual

3

payment. Shortly after the addendum was executed, Dean began to turn more of the day-to-day operations over to Russell.

¶ 8    In 1995, Barry was involved in divorce proceedings, and Dean decided to decrease Barry's involvement in the farming operations. This resulted in a reduction in Barry's income share of the farm partnership. Despite his decreased role in the farming operations, Barry continued to pay one-third of the payments on the Dixon 320 purchase agreement until 2007. By the late 1990s, Dean was no longer involved in the operation. Dean's mental condition began to deteriorate around the time of his eighty-third birthday in 2004. Within a year, he no longer recognized people and would forget how to get home. By this time, Russell was in complete control of the partnership operations.

¶ 9    On February 6, 2007, Barry executed a deed conveying his "undivided interest" in the Dixon 320 to Dean and Irma, husband and wife, as tenants in common.

¶ 10    On March 13, 2009, Margaret Dixon executed a warranty deed to the Dixon 320 to Russell E. Jackson. Margaret would later testify that the deed was executed with Russell as the only grantee pursuant to the specific instruction of Dean. Russell signed the tax revenue sheet (PTAX) and caused the deed to be recorded. Russell did not inform Cheryl of the existence of the deed.

¶ 11    Dean died in May 2011. Shortly thereafter, Barry went to the courthouse and discovered that the Dixon 320 had been conveyed to Russell alone in 2009. Sometime in 2012, Barry told Cheryl about the deed. Barry then brought suit against the DBR Jackson Partnership, as well as Russell, Debra, and Irma Jean individually. Barry's complaint sought an accounting for all the partnership operations and a portion of partnership assets. One of the counts in the complaint concerned the Dixon 320 transaction. On November 8, 2013, Cheryl intervened filing a counter-

4

claim against Russell regarding the Dixon 320 transaction, claiming either an equitable interest in the property, or in the alternative, seeking the imposition of a constructive trust over a one-fifth interest in the property. On competing motions for summary judgment, the trial court entered judgment for Cheryl and against Russell, finding that 1) Cheryl had been excluded from possession of the Dixon 320 and the proceeds therefrom since the inception of the agreement with Margaret Dixon in 1977, 2) Cheryl had not participated in making payments on the purchase agreement or the addendum, 3) Dean had made a gift to Cheryl of a 1/5 interest in the Dixon 320 property when the purchase contract was executed in 1977, 4) Russell had acquiesced to Cheryl's ownership by signing the 1992 addendum, and 5) the doctrine of *laches* did not bar Cheryl's claim. Russell appeals from that judgment.

¶ 12                                                    ANALYSIS

¶ 13          The parties presented the matter to the trial court on cross-motions for summary judgment, thereby conceding the absence of a genuine issue of material fact and inviting the court to decide any questions presented as a matter of law. *Steadfast Insurance Co. v. Caremark Rx, Inc.*, 359 Ill. App. 3d 749, 755 (2005). The sole issue on appeal is, therefore, whether Cheryl was entitled to judgment as a matter of law as Dean's donee under the 1977 purchase agreement.[1] *Daniel v. Aon Corp.*, 2011 IL App (1st) 101508, ¶ 15 (on cross-motions for

---

[1] In her brief Cheryl maintains that she acquired an interest in the subject property by virtue of her claim on a portion of the annual proceeds from the farm operation that were used to make annual payments on the Dixon purchase contract. Since the trial court found that she did not participate in the proceeds or the payments, this argument is based on a theory contrary to the undisputed facts and is not relevant to this appeal.

summary judgment all factual disputes are deemed to be contrary to the record, and the sole issue is whether a party is entitled to judgment as a matter of law).

¶ 14    The dispositive issue in the matter *sub judice* is whether Dean's actions placing Cheryl's name as a grantee on the purchase agreement with Margaret Dixon constituted a completed gift to her as a matter of law. Relying upon *Moore v. Moore*, 9 Ill. 2d 556, 558 (1956), the trial court concluded that a completed gift had taken place. For the following reasons, we find otherwise.

¶ 15    A "gift" is "a voluntary, gratuitous transfer of property by one person to another where the donor manifests an intent to make such a gift and absolutely and irrevocably delivers the property to the donee." *Hall v. Eaton*, 258 Ill. App. 3d 893, 895 (1994). See also *Moniuszko v. Moniuszko*, 238 Ill. App. 3d 523, 529 (1992); *Hugh v. Amalgamated Trust & Savings Bank*, 235 Ill. App. 3d 268, 275 (1992). A gift is not shown unless the donor has relinquished all present and future dominion and power over the subject matter of the gift. *Id.* The alleged donee has the burden of proving the existence of donative intent by the donor, which must be established by clear and convincing evidence. *Moniuszko*, 238 Ill. App. 3d at 529. A rebuttable presumption of donative intent arises where the donor is a parent and the donee is his or her child. *Moore v. Moore*, 9 Ill. 2d at 558. This presumption, once established, can only be overcome by clear and convincing evidence. *Id.*

¶ 16    However, additional considerations arise when the subject matter of the purported gift is an interest in real property. The general rule is that a gift of land is invalid and ineffectual until title has passed to and vested in the donee. *Pocius v. Fleck*, 13 Ill. 2d 420, 427 (1958); *Pesovic v. Pesovic*, 10 Ill. App. 3d 708, 712 (1973).[2] "Where the alleged gift is of a legal estate capable of

---

[2] Exceptions to this general rule arise in limited circumstances, such as where the donee exercises possession of the property that is hostile to the interests of the donor or the donee

legal conveyance, and no conveyance is made, the gift is revocable." *Pocius*, 13 Ill. 2d at 429. Moreover, "[i]f anything remains to be done to complete the gift, what so remains to be done cannot be enforced, and when the gift is incomplete, it may be revoked." *Id.*

¶ 17     Here, the trial court relied on the presumption of gift articulated in *Moore*. In *Moore*, the plaintiff's mother paid the entire purchase price for a parcel of land but instructed the seller to execute a deed to herself and two of her three adult children as joint tenants with right of survivorship. *Moore*, 9 Ill. 2d at 557. The deed was executed, delivered, and recorded. After many years of living on and maintaining the property, the mother died. The son whose name had not been included on the deed brought suit against his siblings, claiming that the presumption of a gift from a parent to her children arose only where the parent remained legally obligated to support the children. *Id.* at 558. Our supreme court, citing a long line of prior precedent, held that the presumption of a gift from parent to child did not depend upon any legal obligation to support the child. *Id.*

¶ 18     On appeal, Russell recognizes that *Moore* stands for the general proposition that a transfer from a parent to a child is presumed to intend a gift. He maintains, however, that *Moore* is distinguishable from the matter *sub judice* in that there was a deed of conveyance in *Moore* that was not present here. He further maintains that the trial court erred in holding that *Moore* was dispositive as to whether Dean had made a completed gift to Cheryl such that he could not

makes permanent and valuable improvements to the property. *Pesovic*, 10 Ill. App. 3d at 712. In addition, special circumstances supporting the existence of an equitable interest in land based upon a gift have been found to exist where the donee received the interest in settlement of a dispute. *Hill v. Bowen*, 8 Ill. 2d 527, 529 (1956). None of these circumstances arise in the instant matter.

revoke the gift by some future action. We agree. *Moore* does not address the specific issue in this case, *i.e.*, whether Dean's instruction to add Cheryl as a contract purchaser on the 1977 purchase agreement constituted a completed gift of an interest in the property that was the subject of the agreement. To answer that question, it is necessary to look to *Pocius* and its progeny.

¶ 19        In *Pocius*, an elderly woman who held title to a particular parcel of property executed a written power of attorney directing her agent to convey the parcel to the plaintiff as a gesture of gratitude for the plaintiff's help during the woman's extended illness. The woman also signed a blank warranty deed form and gave it to the agent. The agent, sensing no urgency in executing the deed of conveyance left on vacation. When he returned, he was informed that the woman had died during his absence. The deed of conveyance was never executed. *Pocius*, 13 Ill. 2d at 424. The plaintiff brought suit against the woman's estate seeking a declaration that decedent had executed an effective gift of the property to the plaintiff. *Id.* The trial court agreed, holding that the executed power of attorney constituted a completed gift of the subject real estate. Our supreme court reversed, holding that the plaintiff's reliance upon the executed power of attorney and blank deed was insufficient to establish a completed gift. *Id.* at 430. The court focused upon the revocable nature of the purported gift, noting that the documents remained in the control of the agent of the donor, not the donee, and were thus "undelivered and incomplete." *Id.* Thus, the court held that to the extent that the power of attorney and instructions to the agent to execute a deed on behalf of the plaintiff may have evidenced a donative intent, the gift was not complete and was subject to revocation at the time the purported donor died. *Id.*

¶ 20        We find the holding in *Pocius* that a gift of an interest in land must be evidenced by the delivery of a deed of conveyance in order to be complete to be more instructive on the issue at hand than the general proposition articulated in *Moore* that a gift from a parent to a child is

8

presumed regardless of the legal duty of the parent toward the child. In the instant matter, as in *Pocius*, something remained to be done to complete the gift, *i.e.*, the final deed of conveyance, and what remained to be done rendered the purported gift incomplete and subject to revocation by the purported donor. *Pocius*, 13 Ill. 2d at 429. We hold therefore that the circuit court erred as a matter of law in finding that Dean executed a completed and irrevocable gift to Cheryl of a one-fifth interest in the Dixon 320 when he caused her name to be listed as a future grantee pursuant to the purchase agreement executed in 1977. The undisputed facts establish that additional steps needed to be performed subsequent to the execution of the original agreement and the addendum; specifically the execution and delivery of the deed. The undisputed facts establish that Dean remained in control of steps necessary to complete the gift to Cheryl, and it is uncontroverted that he exercised that control in such a manner as to revoke the purported gift to Cheryl when he instructed Margaret to execute the deed to Russell as the sole grantee.[3]

¶ 21        Our analysis would not be complete without addressing Cheryl's purported interest as a contract purchaser. The trial court, while holding that her interest in the real estate was pursuant to a gift by Dean, also referenced Cheryl's equitable interest in the property as a contract purchaser. See *Shay v. Penrose*, 25 Ill. 2d 447, 451 (1962). However, as we have previously noted, the uncontroverted facts do not support Cheryl's position as a *bona fide* purchaser, since she did not make any payments toward the purchase of the property. See *Daniels v. Anderson*,

---

[3] While we are loath to engage in speculation, we point out that had the deed naming Dean and his four children as grantees been executed contemporaneously with the purchase agreement and placed in escrow, the outcome would likely have been different. See *Fantino v. Lenders Title & Guaranty Co.* 303 Ill. App. 3d 204, 208 (1999) (escrowee is agent of both buyer and seller).

252 Ill. App. 3d 289, 302 (1993). Moreover, our courts have consistently held that a contract to sell an interest in realty does not result in a transfer of title but is merely an executory agreement that will result in transfer of title once performance of the contract is complete. While a purchaser may have a right to enforce the contract, he or she has no interest in the property (legal or equitable) under a contract to sell an interest in land. *8930 South Harlem, Ltd. v. Moore*, 77 Ill. 2d 212, 219 (1979); *In re Estate of Martinek*, 140 Ill. App. 3d 621, 627 (1986); *Carollo v. Irwin*, 2011 IL App (1st) 102765, ¶¶ 19-20. Here, whatever interest Cheryl might have had under the purchase agreement was of no relevance to her claim to a legal or equitable interest in the Dixon 320.

¶ 22    We hold, therefore, that the trial court erred as a matter of law in finding that Cheryl had an equitable interest in the Dixon 320 property by operation of a purported gift to her from Dean when the purchase agreement was executed in 1977. Because the purchase agreement conveyed no legal or equitable interest to her, any actions by her or Russell subsequent to the execution of the original purchase agreement had no relevance. Thus, the trial court erred in granting Cheryl's cross-motion for summary judgment and denying Russell's motion for summary judgment.

¶ 23    Accordingly, we reverse the order granting Cheryl's cross-motion for summary judgment and denying Russel's motion for summary judgment. We remand the cause to the circuit court for entry of an order granting Russel's motion for summary judgment.

¶ 24                                  CONCLUSION

¶ 25    The judgment of the circuit court of Stark County is reversed, and the case is remanded with directions to enter summary judgment in favor of the counter-defendant-appellant.

¶ 26    Reversed and remanded with directions.

10